LLOYD BARBER v. THOMAS ROBINSON.[1]

January 2, 1901.

Nos. 12,363—(134).

**Ejectment—Fence—Finding.**

Upon a second appeal in this action of ejectment (see 78 Minn. 193), it is *held* that a finding of fact to the effect that a certain fence was built, in part on one of the tracts of land in dispute and in part upon the other, in the year 1882, and subsequent to the securing of claim and color of title to both tracts by the builder of the fence, was supported by the evidence.

**Entry under Color of Title—Seisin.**

A person who enters upon lands claiming the right so to do under a conveyance which gives him color of title, and acquires seisin by his

[1] Reported in 84 N. W. 732.

entry, extends such seisin to the whole tract conveyed, there being no actual adverse possession in the way.

## Assignments of Error.

Various assignments of error disposed of.

Action of ejectment in the district court for Winona county. The case was tried before Snow, J., who found in favor of defendant. From a judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Brown & Abbott* and *Lloyd Barber*, for appellant.

*D. E. Vance* and *Webber & Lees*, for respondent.

COLLINS, J.

For the second time plaintiff appeals from a judgment rendered against him in an action of ejectment. The former opinion, and the facts as they appeared, may be found in 78 Minn. 193, 80 N. W. 968. Upon remittitur, the case was again tried by the court without a jury, and on findings of fact the judgment in question was ordered. The findings do not differ particularly from those formerly made, except in one respect, and in this the difference is very material; in fact, controlling. From the findings on the former appeal it was apparent that a man by the name of Nevill, who built a fence, partly upon one of the tracts of land in dispute and partly upon the other, enclosing about forty acres, was a naked trespasser at that time, having no color of title to either tract. He did not, according to those findings, obtain a conveyance, or a claim, or color of title to either tract until some months afterwards. He then secured a tax title, or deed, to one tract, and a quitclaim deed to the other from another person who had previously obtained a tax title thereto. His entry was not under claim or color of title, and, as between him and the owner and holder, the latter was only dispossessed and disseised of that part of his property which was actually included within the fence. As the court below had found title to all the land by adverse possession, when a part only had been enclosed by the fence, and at a time when Nevill had no claim or color of title to any part of the land, we reversed the judgment, and remanded the case for a new trial. In that opinion it was said, at page 199:

82 M.—8

"We have no doubt but that title by adverse possession was established in defendant as to all of the land which Nevill fenced in the spring of 1881, for he then took actual possession in hostility to the true owner, and this has been maintained and asserted ever since by himself and his successors in interest."

Upon this trial there was testimony tending to show that the fence in question was built after Nevill obtained the tax title and deed before mentioned, fixing the spring of 1882 as that time. The men who built it both testified to this. This testimony was not conclusive by any means, but it was sufficient to justify the court below in finding that the fence was built in 1882, after Nevill had obtained the conveyances before mentioned. In justice to these witnesses, it is proper to say that one of them did not testify at the first trial, and that the other did not pretend to fix the date with accuracy when testifying upon that trial. The nearest he came to it was when he stated that the fence was built "about seventeen years ago." The fact was, as shown by the examination upon this point, that the exact year in which the fence was built was not considered of any particular consequence by the attorneys at the time of that trial, and hence there was no attempt to fix the time with any positiveness.

We see no reason for saying that this particular finding as to the time when the fence was built, and fixing it as subsequent to the obtaining of the claim and color of title by Nevill, was not justified by the evidence; so that, with the present finding upon this point, the doctrine that when a man enters upon land, claiming the right so to do under a conveyance which gives him color of title, and acquires a seisin by his entry, such seisin extends to the whole tract conveyed, there being no actual adverse possession in the way, is applicable to the present case. The entry and the possession all referred to the claim of title, and are coextensive with the boundaries mentioned in the conveyance or other written instrument under which the entry was made. We have examined the testimony carefully as to the effect of the evidence as to the continuity and maintenance of possession, and see no reason for reaching a different conclusion from that indicated on the former trial.

Several assignments of error relate to rulings made by the court in respect to the reception or exclusion of evidence touching plaintiff's title to the land. These rulings become immaterial, because the court found that the plaintiff had perfect paper title, and placed its decision upon adverse possession; hence the rulings did not influence the court's decision, and, if erroneous, were without prejudice. None constitutes reversible error.

It is contended by the plaintiff that the deed from Nevill to Mack did not convey one tract of this land,—what is known as "Outlot 24" upon the plat of the town site of Richmond. No such construction can be maintained; for, if this view should be adopted, the deed conveyed nothing at all. Evidently, the intent of the parties was to include the outlot as part of the premises conveyed.

We find no error in the ruling of the court complained of in the eighth assignment. The testimony of the witness Allen given at the first trial had been read to him, and he had been interrogated as to the correctness of his answers. This brought the testimony before the court for every purpose, even if the subsequent ruling confining its operation to impeachment was incorrect. We have examined the assignments of error in respect to the rulings of the trial court upon appeal from the clerk's taxation of costs. The only objection made to the item of $4 "for taking the deposition of Nevill" was that it was not used at the second trial. No other objection can be considered, and the one made is of no effect. See Mankato L. & S. Co. v. Craig, 81 Minn. 224, 83 N. W. 983. The item of $31.12, witness fees for George St. Clair, was properly allowed upon the showing made before the court.

No particular mention need be made of other assignments of error, and the judgment stands affirmed.